IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
2015 DEC 24 A 9: 46
CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

MINNIELAND PRIVATE DAY SCHOOL, INC.
a Virginia corporation,

Plaintiff,

v.

APPLIED UNDERWRITERS CAPTIVE
RISK ASSURANCE COMPANY, INC.,

Defendant.

Case No. 1:15-CV-1695
(AJT/IDD)

## COMPLAINT

Plaintiff Minnieland Private Day School, Inc. (*Minnieland*), by counsel, moves this court for judgment against Defendant Applied Underwriters Captive Risk Assurance Company, Inc. (*Applied Underwriters*), and in support states the following:

### Parties

1. Minnieland is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Woodbridge, Prince William County, Virginia.

2. Applied Underwriters, upon information and belief, is and has been since 2011, an Iowa corporation, with its principal place of business in Omaha, Nebraska.

### Jurisdiction and Venue

3. This court has jurisdiction of this case pursuant to 28 U.S.C. §1332(a), as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

Page 1 of 12

4. Venue is proper pursuant to 28 U.S.C. §1391(a)(2), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this district and division.

### Factual Overview

5. Minnieland is a provider of education and childcare services in Virginia, subject to the workers' compensation laws and requirements of Virginia.

6. Its workers' compensation insurance policy was expiring in January 2013.

7. In early January 2013, Mark Rousseau, Prince Wood Insurance (*Rousseau*) met with Minnieland in Woodbridge, Virginia.

8. At all times relevant to this Complaint, Rousseau was acting as Allied Underwriters' agent. Va. Code §38.2-1801(A)("A licensed agent shall be held to the agent of the insurer that issued the insurance sold, solicited, or negotiated….").

9. Rousseau recommended that Minnieland purchase a workers' compensation insurance policy from Applied Underwriters, specifically its EquityComp® profit sharing plan (*EquityComp®*).

10. Applied Underwriters specifically represented that EquityComp® was not a retrospective rating plan, e.g. its benefits were "no use of Loss Conversion Factors", it would not "require waiting for cumbersome retrospective or dividend calculations", and "premium taxes and assessments are calculated using the guaranteed cost premium." Exhibit "1".

11. It further specifically represented that it would apply Minnieland's workers' compensation insurance premiums to a "segregated cell" over a term of 3 years and permit Minnieland to share in the profits of its premiums.

12. In reliance on the representation that Applied Underwriters' policy would extend for a 3 year term, saving it from the yearly burden of policy placement, and that it would be able to share in the profits from its insurance premiums, Minnieland agreed to purchase workers' compensation insurance from Allied Underwriters.

13. On or about January 11, 2013, Rousseau notified Allied Underwriters that Minnieland had accepted its proposal and emailed its form "Request to Implement Program and Bind Coverage." Exhibit "2".

14. On January 14, 2013, Allied Underwriters had Minnieland sign its "Reinsurance Participation Agreement" (*Agreement*) , Exhibit "3", its "Request to Bind Coverages & Services", Exhibit "4", and pay it $81,298.00 (consisting of a $73,044 deposit and an $8,254.00 "nonrefundable fee"), Exhibit "5", all of which Minnieland did and copies of which Rousseau faxed to Allied Underwriters that day.

15. Pursuant to the Agreement, Minnieland was prohibited from electing a deductible workers' compensation insurance policy and was issued a guaranteed cost policy for the period 1/15/13 to 1/15/14 with a "Total Estimated Annual Premium $589,163", Exhibit "6" (information page), which was renewed for the period 1/15/14 to 1/15/15 with a "Total Estimated Annual Premium $642,333", Exhibit "7" (information page), and renewed again for the period 1/15/15 to 1/15/16 with a "Total Estimated Annual Premium $706,160." Exhibit "8" (information page).

16. For the first 33 of the 36 months of the EquityComp® profit sharing plan (January 2013 through October 2015), Minnieland's monthly premiums averaged $58,810; e.g. in October 2015 Applied Underwriters billed it $40,386. Exhibit "9".

17. Allied Underwriters billed Minnieland $471,213 for the November 2015 premium, an incomprehensible 1,167% increase from the October premium and a staggering 801% increase over the first 33 months' average. Exhibit "10".

18. Allied Underwriters refused to disclose the basis, including the rates and formulas, on which it assessed the November 2015 premium, despite repeated efforts from Minnieland to have it do so.

19. Allied Underwriters billed Minnieland $414,604 for the December 2015 premium, a 1,027% increase from the October premium and a 705% increase over the first 33 months' average. Exhibit "11".

20. Rousseau also attempted, unsuccessfully, to get Allied Underwriters to disclose the basis for the November and December 2015 premiums, as late as December 15 requesting Allied Underwriters identify "which, and how, individual claim status changes translated to such an untoward premium figure. In other words, which claims reflect a change and how those changes individually contribute to the premium." Exhibit "12".

21. While Minnieland nevertheless paid the November premium it did not authorize payment of the $414,604 December 2015 premium.

22. On December 16, 2015, Allied Underwriters faxed Minnieland notice it terminated the EquityComp® profit sharing plan, effective December 27, 2015, for "Non-Payment of Premium; Client has an outstanding balance." Exhibit "13".

23. At no time relevant to this Complaint was Allied Underwriters licensed to transact business in Virginia, specifically including any insurance business.

24. At no time relevant to this Complaint has the Virginia Workers' Compensation Commission approved the Agreement.

25. At no time relevant to this Complaint has the Virginia State Commission approved the premiums, fees, rates, charges, or any other "balance" imposed and created pursuant to the Agreement.

26. At no time relevant to this Complaint has the Virginia State Corporation Commission approved any worker's compensation insurance rate applicable to the Agreement that would result in the October and November 2015 premiums assessed by Allied Underwriters.

27. While Applied Underwriters represented it would ensure "high-quality claims management" and produce "high-quality medical care at a low cost", it had the ability and motiviation to manipulate the manner in which it handled, classified, and reported claims for its own financial benefit to Minnieland's detriment and, on Minnieland's belief, it did so.

28. Applied Underwriters is a company engaged in the business of making contracts of workers' compensation insurance, including its EquityComp® profit sharing plan and the Agreement, and is an "insurance company" as defined by Virginia Code § 38.2-100.

29. Applied Underwriters is not qualified, authorized, or licensed to act as an insurance company or do insurance business in Virginia.

30. Applied Underwriters assessed workers' compensation insurance rates and premiums on Minnieland that were not disclosed to, let alone approved by, the Virginia State Corporation Commission and used a policy form that was not disclosed to, let alone approved by, the Virginia Workers' Compensation Commission.

31. The Agreement is not a contract of reinsurance.

32. Minnieland at all times in fact paid workers' compensation insurance premiums directly to Applied Underwriters, the purported reinsurer, which simply used those premiums it charged Minnieland to pay the guaranteed cost workers' compensation insurance policies issued by its affiliate insurance company Continental Indemnity Company, both of which are Berkshire Hathaway entities.

33. On Minnieland's information and belief, Applied Underwriters misrepresented its EquityComp® profit sharing plan, the Agreement in particular, to attempt to circumvent Virginia's insurance and workers' compensation laws, without limitation including:

a) Va. Code § 38.2-310 (each insurance policy or contract shall specify a statement of the premium;

b) Va. Code § 38.2-310 ("All fees, charges, premiums or other consideration charged for the insurance or for the procurement of insurance shall be stated in the policy...no person shall charge or receive any fee, compensation, or consideration for insurance or for the procurement of insurance that is not included in the premium or stated in the policy");

c) Va. Code § 38.2-312 (no insurance contract "shall contain any condition, stipulation or agreement: 1. Requiring the contract to be construed according to the laws of any other state or country...; or 2. Depriving the courts of this Commonwealth of jurisdiction in actions against the insurer.");

d) Va. Code § 38.2-1906 (every insurer must file its rates, no insurer shall make or issue an insurance contract or policy except in accordance with rate filings in effect at the time);

e) Va. Code §§ 38.2-1102 and 1108 (captive insurers must have licenses and pay taxes on premiums),

f) Va. Code § 65.2-813 (no corporation shall enter into any workers' compensation policy of insurance unless its form has been approved by the Workers' Compensation Commission);

g) Va. Code § 65.2-818 (requiring minimum standards of service for insurers writing workers' compensation policies, including but not limited to the servicing of such

policies, the establishment of offices within the Commonwealth, and the payment of compensation).

34. Applied Underwriters has, directly and through its agents, collected premiums and other fees, charges, and assessments for contracts of insurance in Virginia, and transacted matters subsequent to the execution of and arising out of contracts of insurance.

35. Applied Underwriters' EquityComp® profit sharing plan, including the Agreement specifically, and its transaction of the solicitation, procurement, matters after its execution, the collection of premiums, deposits, fees, charges, and other assessments pursuant to it, are in violation of Virginia's insurance and workers' compensation laws.

36. Applied Underwriters' EquityComp® profit sharing plan, specifically including the Agreement, is intentionally vague and misleading and is designed to and does impose excessive and unapproved insurance rates in violation of Virginia law.

37. Applied Underwriters has never accounted for the receipt, maintenance, and application of the premiums, fees, deposits, charges, and other assessments it has billed Minnieland for workers' compensation insurance and, on Minnieland's information and belief, Applied Underwriters has never applied investment income to its "segregated cell", if in fact any such "segregated cell" exists.

38. Applied Underwriters' Agreement is nothing more than an attempt to obtain premiums, fees, penalties, deposits, service charges, and other monies for the provision of a guaranteed cost workers' compensation insurance policy without authority of Virginia and without providing any additional benefit to Minnieland.

### III. CAUSES OF ACTION
### Count I: Declaratory Judgment

39. All previous allegations in this Complaint are incorporated here as if restated.

40. An actual controversy exists between Minnieland and Allied Underwriters regarding the validity of the Agreement, the premiums, deposits, fees, charges, and other monies paid by Minnieland to Allied Underwriters and whether, and to what extent, Minnieland has any further obligations to Allied Underwriters.

41. Applied Underwriters has transacted insurance business in Virginia without authority and a license.

42. Because the Applied Underwriters' EquityComp® profit sharing plan, specifically the Agreement, violates Virginia public policy and laws regarding insurance and workers' compensation, and because Applied Underwriters' transaction of business regarding and affecting Minnieland's workers' compensation insurance were without authority and license from Virginia, the Agreement is void.

43. Minnieland is entitled to a declaration from this court that:

(a) the Agreement is an insurance contract solicited, secured, and issued by Applied Underwriters,

(b) Applied Underwriters' actions in soliciting, entering, and issuing the Agreement and billing, collecting, and demanding insurance premiums under it and handling claims constitute transacting insurance business in Virginia;

(c) Applied Underwriters is not qualified or authorized to do business in Virginia;

(d) Applied Underwriters' solicitation of the Agreement, collection of insurance premiums, fees, deposits, and other assessments from Minnieland under it are in violation of Virginia law; and

(e) the Agreement is void.

## Count II: Declaratory Relief
## and Reformation of the Agreement

44. All previous allegations in this Complaint are incorporated here as if fully restated.

45. As an alternative to the relief sought in Count I, Minnieland is entitled to a declaration from this court:

(a) that the Agreement is an illegal insurance policy, and that the terms of the Agreement must be reformed to comply with Virginia law;

(b) as to what amounts Applied Underwriters was entitled to bill Minnieland under Virginia law; and

(c) as to what amounts, if any, Applied Underwriters must return to Minnieland.

## Count III: Declaratory Relief

46. All previous allegations in this Complaint are incorporated here as if restated.

47. The premiums, fees, deposits, and other charges Applied Underwriters has billed and collected from Minnieland under the Agreement, and any sums it claims are due, constitute excessive insurance rates in violation of Virginia Code § 38.2- 1904.

48. Minnieland is entitled to a declaration from this court:

(a) that the premiums, deposits, and other charges Applied Underwriters billed Minnieland under the Agreement were and are excessive as defined in Virginia Code § 38.2- 1904;

(b) as to what amount of premiums Applied Underwriters was entitled to bill Minnieland; and

(c) as to what amount of premiums, if any, Applied Underwriters must return to Minnieland.

## Count IV: Fraud

49. All previous allegations in this Complaint are incorporated here as if restated.

50. Applied Underwriters, by and through its agents and representatives, intentionally, fraudulently, and/or negligently misrepresented to Minnieland material facts about the expertise of their insurance agents, the ability and authority of Applied Underwriters to conduct insurance business in Virginia, the true nature of the Agreement, and the excessive fees, surcharges, penalties, and premiums contained in the Agreement, among other misrepresentations as stated earlier.

51. On Minnieland's information and belief, Applied Underwriters fraudulently manipulated and misrepresented the claims of Minnieland's injured employees to arbitrarily increase premiums.

52. Minnieland reasonably relied on all of these misrepresentations which led it to do business with Applied Underwriters and ultimately to enter into the Agreement with Applied Underwriters. But for these misrepresentations, Minnieland would not have entered into the Agreement with Applied Underwriters.

53. As a result of Applied Underwriters' fraud, Minnieland has suffered damages which include, but are not necessarily limited to, payment of excessive premiums, deposits, fees, and other charges to Applied Underwriters. In addition, Minnieland has been forced to obtain alternative workers compensation insurance and pay additional premiums.

## Count V: Breach of Contract

54. All previous allegations in this Complaint are incorporated here as if restated.

55. To the extent that the Court determines that the Agreement should be upheld, Minnieland asserts that Applied Underwriters breached it by prematurely canceling the insurance policy and requiring Minnieland to obtain alternative workers' compensation insurance. Applied Underwriters also breached the Agreement by failing to negotiate in good faith before the premature cancellation of the Agreement.

56. On Minnieland's information and belief, Applied Underwriters also breached the Agreement by manipulating the claims of Minnieland's employees.

57. On Minnieland's information and belief, Applied Underwriters arbitrarily administered workers' compensation claims of Minnieland's employees for the financial benefit of Applied Underwriters at the expense and to the detriment of Minnieland to obtain from Minnieland an arbitrary profit not reasonably related to claims administration, expense, or underwriting.

58. Minnieland has suffered damages as a result of Applied Underwriters' breach of contract which include, but are not necessarily limited to, the cost of having to purchase alternative workers' compensation insurance and excessive premiums, fees, surcharges, and other charges billed by and paid to Applied Underwriters.

WHEREFORE, Minnieland prays that:

1. that this Court declare that the Agreement is void;

2. in the alternative, that this Court reform the Agreement to conform with Virginia law;

3. that this Court declare that the premiums, fees, and other charges Applied Underwriters billed to Minnieland were excessive;

4. that this Court declare what amount of premiums Applied Underwriters was entitled to bill Minnieland under Virginia law; and

5. that this Court declare what amount of premiums, if any, Applied Underwriters must return to Minnieland;

6. That this Court declare that Minnieland is entitled to a full, complete and accurate accounting from Applied Underwriters with regard to all premiums, fees, and other charges paid to, received, or processed by Applied Underwriters pursuant to the Agreement;

7. that as to Counts IV and V, a jury be empaneled to try this case and that Minnieland be awarded damages for Applied Underwriters' fraud and breach of contract in an amount to be determined by a jury at trial;

8. That Minnieland be awarded its costs in this behalf expended; and

9. Minnieland be awarded such other, further relief as the Court may deem just and proper.

                          MINNIELAND PRIVATE DAY SCHOOL, INC.
                          By counsel

*/s/ J. Scott Krein*

J. Scott Krein, VSB No. 26656
KREIN LAW FIRM
Counsel for Plaintiff Minnieland Private Day School, Inc.
4000 Genesee Place, Suite 117
Prince William, VA 22192
tel. 703.580.8377
fax 703.580.8553
jsk@kreinlaw.com